## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 27 2018, 9:26 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John S. Terry
Cate, Terry & Gookins LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy D. Martin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 27, 2018

Court of Appeals Case No.
29A04-1712-CR-2992

Appeal from the Hamilton Circuit Court

The Honorable Paul Felix, Judge

Trial Court Cause No.
29C01-0102-CF-5

**Najam, Judge.**

# Statement of the Case

Timothy Martin appeals the trial court's revocation of his probation and order that he serve the entirety of his previously suspended four-year sentence at the Indiana Department of Correction ("DOC"). Martin presents a single issue for our review, namely, whether the trial court abused its discretion when it revoked his probation and sentenced him. We affirm.

# Facts and Procedural History

In 2001, Martin pleaded guilty to three counts of child molesting, all as Class B felonies. The trial court entered judgment accordingly and sentenced Martin to three consecutive terms of twelve years, each with ten years executed and two years suspended. In March 2015, Martin was released from the DOC and began a six-year term on probation. In December 2015, the State filed a petition to revoke probation, alleging that Martin had failed to provide his probation officer with three different written verifications, and Martin admitted to the probation violations in March 2016. The trial court modified Martin's sentence by ordering two years of his suspended sentence be executed in work release through Hamilton County Community Corrections. Martin was released on April 27, 2017, with four years remaining on probation.[1]

---

[1] Martin was also convicted of sexual misconduct with a minor in 1995. He received a four-year sentence, a year and one-half of which was to be served in work release and the balance suspended to probation. After his first violation for non-compliance with work release and failure to pay, the trial court modified Martin's probation and he served one and one-half years in the Hamilton County Jail. After his return to probation, Martin violated probation twice more, which included failure to attend and successfully complete counseling and failure to pay.

While on work release, Martin worked at a Wendy's restaurant in Noblesville. However, once Martin returned to probation, he eventually moved to Anderson. Martin's driver's license has been suspended since 1998, and, lacking "reliable transportation to and from [Wendy's]," Martin eventually lost his job. *Id.*

Soon thereafter, Martin missed four required sex offender counseling sessions from June 27, 2017, to August 1, 2017, and as of August 11, 2017, he had an outstanding balance of $310 owed to the counseling center. Martin was eventually discharged from sex offender counseling due to this noncompliance with attendance and unpaid fees. On August 14, 2017, the State filed another petition to revoke probation. This time, the State alleged that Martin had violated two conditions of his 2003 sentencing order:

> Condition 3. You shall attend, actively participate in and successfully complete a court-approved sex offender treatment program as directed by the court. Prompt payment of any fees is your responsibility and you must maintain steady progress toward all treatment goals as determined by your treatment provider. Unsuccessful termination from treatment or non-compliance with other required behavioral management requirements will be considered a violation of your probation. You will not be permitted to change treatment providers unless the court gives you prior written approval.
>
> * * *
>
> Condition 4. You shall not miss any appointments for treatment, psychotherapy, counseling or self-help groups (any 12 Step Group, Community Support Group, etc.) without prior approval

from your probation officer and the treatment provider involved, or a doctor's excuse. You shall comply with the attendance policy for attending appointments as outlined by the Court. You shall continue to take any medication prescribed by your physician.

Appellant's App. Vol. II at 26.

[5] The trial court appointed a public defender to represent Martin, and the court set the matter for a fact-finding hearing on October 19, 2017. At that hearing, Martin admitted that he had violated the conditions of his probation as the State had alleged, and he requested and was granted forty-five days before a dispositional hearing so that he could secure employment and begin payment of the counseling fees.

[6] At the dispositional hearing, Martin testified that he had only missed the counseling appointments because of his lack of employment and trouble securing transportation. Martin stated that since the fact-finding hearing, he had secured a full-time job which was set to start either that afternoon or the next morning as well as a part-time job at Wendy's for which he was going to fill out "[his] tax paperwork on Monday." Tr. Vol. 2 at 15. Martin also alleged that he had solved his transportation issues because he had obtained employment and would be able to pay someone gas money.

[7] At the conclusion of the dispositional hearing, the trial court stated as follows:

The Court has considered the evidence that was presented today. . . . [I]f I looked at this case in a vacuum and just thought about an individual who is having difficulty getting to his

counseling, the plea that I heard today may seem reasonable. But as I look at the case in its totality, it does not any longer appear to me to be reasonable. It should be noted for the record that . . . [Martin] was convicted in this matter of multiple counts of Child Molest as a Class B felony. [Martin] prior to this cause had previously attempted to participate in probation for a prior conviction for Sexual Misconduct With a Minor. The probation that he attempted to serve in that cause was violated multiple times. At least two of those multiple times was based upon [Martin's] claimed, or due to [Martin's] inability to complete the counseling that he was required to do. *And here we are once again with the same exact situation, [Martin] is not doing the counseling that he is required to do*.

. . . It was not the Court's requirement that [Martin] live so far away that he could not go to counseling; it was his choice to do that. Whatever other choices he has made that make it difficult for him to go to counseling, that's on you, Mr. Martin. This is not your first time being told to go to counseling, it's not your first time failing to go to counseling, even in this cause. This is your second time coming to court under allegations that you have failed to go to counseling.

*Id.* at 24 (emphasis added). Accordingly, the trial court revoked Martin's probation and sentenced him to serve the remaining four years of his sentence at the DOC. Martin now appeals.

## Discussion and Decision

[8] It is well settled that

[p]robation is a matter of grace and a conditional liberty which is a favor, not a right. The trial court determines the conditions of probation and may revoke probation if those conditions are violated. The decision to revoke probation is within the sound

discretion of the trial court. And its decision is reviewed on appeal for abuse of that discretion.

*Ripps v. State*, 968 N.E.2d 323, 326 (Ind. Ct. App. 2012). "An abuse of discretion occurs when the decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.* We consider only the evidence most favorable to the judgment, and we will not reweigh the evidence or judge the credibility of the witnesses. *Cox v. State*, 850 N.E.2d 485, 488 (Ind. Ct. App. 2006).

[9] Probation revocation is a two-step process. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). First, the trial court makes a factual determination that a violation of a condition of probation actually occurred and then, if the violation is proven, the trial court must determine if the violation warrants revocation of the probation. *Id.* "However, even a probationer who admits the allegations against him must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation." *Id.* And, if the trial court finds that a violation occurred, the court may impose one of the following sanctions:

> (1) Continue the person on probation, with or without modifying or enlarging the conditions.

> (2) Extend the person's probationary period for not more than one (1) year beyond the original probationary period.

> (3) Order execution of all or part of the sentence that was suspended at the time of initial sentencing.

Ind. Code § 35-38-2-3(h) (2018). A defendant is entitled to challenge the sentence a trial court decides to impose after revoking probation. *Stephens v. State*, 818 N.E.2d 936, 939 (Ind. 2004).

[10] Under Indiana Code Section 35-38-2-3(g), a trial court may not revoke a defendant's probation "for failure to comply with conditions of a sentence that impose financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay." In *Runyon v. State*, our Supreme Court held as follows:

> While the State has the burden to prove (a) that a probationer violated a term of probation and (b) that, if the term involved a payment requirement, the failure to pay was reckless, knowing, or intentional, we hold that it is the defendant probationer's burden, consistent with the result in *Woods*[ *v. State*, 892 N.E.2d 637 (Ind. 2008)], to show facts related to an inability to pay and indicating sufficient bona fide efforts to pay *so as to persuade the trial court that further imprisonment should not be ordered*.

939 N.E.2d 613, 616 (Ind. 2010) (emphasis added). If the defendant makes this showing, then the trial court "must consider alternative measures of punishment other than imprisonment." *Id.*

[11] Here, Martin contends that his "violations stem from his inability to meet the financial obligations inherently imposed in the terms of his probation." Appellant's Br. at 7. And he maintains that, pursuant to Indiana Code Section 35-38-2-3(g), while the State satisfied its burden of proof under *Runyon*, he satisfied his burden with respect to the violations of both probation conditions

"to show facts related to an inability to pay and indicating sufficient bona fide efforts to pay." *See Runyon*, 939 N.E.2d at 613. Thus, he asserts that the trial court was required to, and failed to, consider alternative measures of punishment other than placement with the DOC.

[12] In particular, Martin directs us to his testimony that he was unable to pay counseling fees because he had lost his job at Wendy's in Noblesville and could not find a job in Anderson until the time of the dispositional hearing. But the trial court had no obligation to credit Martin's testimony. Indeed, the court discounted Martin's excuses in light of his history of "multiple" probation violations, including two prior instances of failing to complete counseling. Tr. Vol. 2 at 23. Martin's contentions on appeal amount to a request that we reweigh the evidence, which we cannot do. Martin concedes that he knowingly failed to pay the costs associated with his attendance at counseling sessions, and the court was not "persuaded" by his testimony that he was unable to pay and had made sufficient bona fide efforts to pay. *See Runyon*, 939 N.E.2d at 616.

[13] It is well settled that a single violation of a condition of probation is sufficient to permit the trial court to revoke probation. *Treece v. State*, 10 N.E.3d 52, 59 (Ind. Ct. App. 2014), *trans. denied*. Because Martin did not satisfy his burden of proof under *Runyon* with respect to his failure to pay fees, we need not address his contention regarding his violation of Condition 4, which required him to attend counseling sessions. We hold that the trial court did not abuse its discretion when it revoked Martin's probation and imposed the four-year sentence. *See Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007) (holding trial court did not

abuse its discretion in ordering defendant to serve previously suspended sentence when he had multiple probation violations, a past criminal history, and an inability to comply with ordered programs).

[14]     Finally, the dissent concludes that Indiana Code Section 35-38-2-3(g) extends to any financial obligation directly related to a condition of probation, in this case to transportation costs related to counseling sessions. We believe that interpretation is overbroad. Neither this court nor our Supreme Court has ever interpreted the statute to apply to ancillary costs such as transportation. The condition that Martin attend those sessions does not impose a "financial obligation" as contemplated by the statute. Transportation is an ancillary expense commonly assumed by probationers. And, even if the statute did apply to transportation costs, Martin has not shown that he was unable to attend counseling sessions in Anderson instead of Noblesville after his move.

## *Conclusion*

[15]     The trial court's sanction for Martin's probation violations is not clearly against the logic and effect of the facts and circumstances before the court in this case. As the trial court observed at the dispositional hearing, Martin has a long history of probation violations, including at least two failures to complete court-ordered counseling. The trial court was well within its discretion to order Martin to serve his entire previously suspended sentence.

[16]     Affirmed.

Altice, J., concurs.

Robb, J., dissents with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy D. Martin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Case No.
29A04-1712-CR-2992

**Robb, Judge, dissenting.**

I respectfully dissent from the majority's conclusion that the trial court did not abuse its discretion in revoking Martin's probation and ordering the remaining four years of his previously suspended sentence be served at the DOC. Indiana Code section 35-38-2-3(g) intends to prevent the incarceration of probationers based solely on their inability to satisfy financial obligations and I believe the facts before us present just that. Therefore, in the absence of the trial court's consideration of the financial nature of Martin's violations and alternative measures of punishment other than imprisonment, I would vacate the trial court's order and remand for such consideration.

[18]   The majority concludes that because Martin failed to satisfy his burden of proof with respect to his failure to pay counseling fees, it "need not address [Martin's] contention regarding his violation of Condition 4," slip opinion at ¶ 13, namely, whether Indiana Code section 35-38-2-3(g) also applies to Martin's transportation issues.  I believe Martin satisfied his burden *and* persuaded the trial court.  However, because Martin's failure to pay counseling fees and Martin's transportation issues share the same factual basis, I first consider the merits of Martin's argument regarding Indiana Code section 35-38-2-3(g).

# I. Indiana Code section 35-38-2-3(g)

[19]   Martin testified it was transportation issues stemming from his lack of employment which prevented him from attending the counseling sessions.  Tr., Vol. 2 at 14.  Martin's driver's license was suspended in 1998, and, for yet more unmet financial obligations, his suspension persists.[2]  Therefore, because Martin is entirely dependent upon others for transportation and traveling to and from counseling sessions "requires at least money for gas," Appellant's Br. at 8,

---

[2] Martin testified:

> I have fines and fees to pay out of both Superior 4 and Superior 5.  I'm checking on SR-22s now, and right now it's $500 to get an SR-22 in order to turn in to be able to get the indigent form to get my license back.

Tr., Vol. 2 at 16.  When asked what he has done to obtain his driver's license since 1998, Martin stated:

> I got out of the DOC in March of 2015, had to settle a warrant with Tipton.  Got out of there in 2017.  I finally came to court over here for Superior 5 on the driving while suspended, and then that's when they told me I had $334 in fines.  And then I have an old outstanding ticket from Noblesville for [$]321. And then one of them is $1,000.  That was imposed as a fine.  I can't remember which because I don't have my driving record with me that they give me a copy of.  But I'm trying to get the indigent form to get those fees waived so I can re-obtain my license.

*Id.* at 17.

Martin asks that we apply Indiana Code section 35-38-2-3(g) to this violation as well.

[20]     The State acknowledges that it is "a general rule that probation cannot be revoked for a failure to pay court-ordered fees where a defendant has no ability to acquire funds." Brief of Appellee at 12. However, the State argues Condition 4 of Martin's probation requiring his attendance at counseling sessions is a "non-monetary obligation" and that "Indiana courts have interpreted [Indiana Code section 35-38-2-3(g)] as applying only to purely financial conditions placed on a defendant's probation." *Id.* Although my review of decisions applying Indiana Code section 35-38-2-3(g) to conditions such as child support, court costs, restitution, and probation user fees,[3] is consistent with the State's argument, I believe it remains an open question of law as to whether the ancillary costs implicated by this case constitute the type of financial obligations contemplated by Indiana Code section 35-38-2-3(g).

> When faced with a question of statutory interpretation, we first examine whether the language of the statute is clear and unambiguous. If it is, we need not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings. Where a statute is open to more than one interpretation, it is deemed ambiguous and subject to judicial construction.

---

[3] *See, e.g., Mauch v. State,* 33 N.E.3d 387, 391-92 (Ind. Ct. App. 2015) (applying Indiana Code section 35-38-2-3(g) to restitution); *Runyon,* 939 N.E.2d at 615 (applying Indiana Code section 35-38-2-3(g) to child support obligations, court costs, and probation user fees).

*Dobeski v. State*, 64 N.E.3d 1257, 1259 (Ind. Ct. App. 2016) (citations and quotations omitted).

[21] Indiana Code section 35-38-2-3(g) provides:

> Probation may not be revoked for failure to comply with conditions of a sentence that imposes financial obligations on the person unless the person recklessly, knowingly, or intentionally fails to pay.

The legislature did not define "financial obligations" as it appears in Indiana Code chapter 35-38-2. As the parties have presented reasonable—and competing—interpretations of "financial obligations," the language is ambiguous and I turn to the rules of statutory construction. When engaging in statutory interpretation, our primary objective is to "ascertain and give effect to the legislature's intent," *Dobeski*, 64 N.E.3d at 1259, and we presume that the General Assembly "intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals," *State v. CSX Trans., Inc.*, 673 N.E.2d 517, 519 (Ind. Ct. App. 1996).

[22] Although it is difficult to determine legislative intent in the absence of legislative history or a purpose statement, *Wallace v. State*, 905 N.E.2d 371, 379 (Ind. 2009), I am aided by the assumption that our legislature sought to avoid utilizing our state's penal facilities as modern day debtor's prisons. Moreover, the text of Indiana Code section 35-38-2-3(g) reflects the holding of *Bearden v. Georgia*, 461 U.S. 660 (1983). There, the United States Supreme Court explained:

We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority. If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. Only if alternate measures are not adequate to meet the State's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay. To do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment.

*Id.* at 672-73; *see also Runyon,* 939 N.E.2d at 616 (looking to *Bearden* to interpret Indiana Code section 35-38-2-3(g)). Accordingly, I believe Indiana Code section 35-38-2-3(g) exhibits our legislature's intent to comply with *Bearden* and the principles of "fundamental fairness" required by the Fourteenth Amendment. 461 U.S. at 672. The question remains, however, to which "financial obligations" do these principles apply?

[23] When a statute is reasonably susceptible to more than one interpretation, this court must consider the consequences of a particular construction. *Dreiling v. Custom Builders*, 756 N.E.2d 1087, 1089 (Ind. Ct. App. 2001). And, we "do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result." *Anderson v. Gaudin*, 42

N.E.3d 82, 85 (Ind. 2015). If the term "financial obligations" is interpreted as narrowly as the State contends, Indiana Code section 35-38-2-3(g) provides a defendant added protection only when the defendant is unable to afford typically higher cost obligations—such as fees, restitution, or child support payments—but not typically lower cost obligations—such as transportation. In other words, so long as a defendant is poor enough to be unable to meet his higher cost obligations, he receives the added protection of Indiana Code section 35-38-2-3(g), but if the defendant is too poor even to obtain transportation, he receives no such benefit. Surely this is an unjust result and I am unaware of any logical reason why our legislature would extend such protection to the former while restricting it from the latter. I am similarly unaware of any reason the Fourteenth Amendment's principles of "fundamental fairness" would be so limited. *See Sims v. United States Fid. & Guar. Co.,* 782 N.E.2d 345, 349 (Ind. 2003) (noting "[i]f a statute has two reasonable interpretations, one constitutional and the other not, we will choose the interpretation that will uphold the constitutionality of the statute"). After all, de facto debtor's prisons are no less repugnant to the Constitution than those established by law.

[24] Furthermore, while the State certainly has a legitimate—indeed compelling—interest in insuring a defendant complies with the terms of his probation, I do not believe revoking their probation absent such consideration serves to further that interest. As the Supreme Court warned in *Bearden,* revoking a defendant's probation where, through no fault of their own, they failed to satisfy a financial

obligation, will not make payment "suddenly forthcoming." 461 U.S. at 670. Rather, "such a policy may have the perverse effect of inducing the probationer to use illegal means to acquire funds to pay in order to avoid revocation." *Id.* at 671.

For these reasons, I believe Indiana Code section 35-38-2-3(g) extends to any financial obligation *directly* relating to a condition of probation. Where the defendant's violation stems from an overt financial obligation, such as the payment of fees, restitution, or child support, the State's burden—pursuant to *Runyon*—would remain unchanged. However, in cases involving a defendant's inability to meet ancillary financial obligations, should the defendant seek to avail himself of the added protection of Indiana Code section 35-38-2-3(g), the defendant would admit the violation and notify the trial court of his financial inability to satisfy the condition of probation. Then, consistent with *Runyon*, admission of such a violation would be "sufficient to establish by a preponderance of the evidence that the defendant violated conditions of his probation and this failure to pay was knowing, if not also intentional." 939 N.E.2d at 617. Thereafter, it would become the defendant's burden "to show facts related to an inability to pay and indicating sufficient bona fide efforts to pay so as to persuade the trial court that further imprisonment should not be ordered," *id.*, and if the defendant makes this showing, the trial court "must consider alternative measures of punishment other than imprisonment," *id.* at 616 (citation omitted).

The State argues:

> In a purely practical sense, it is impossible for a trial court to provide services to a probationer without the defendant incurring some sort of incidental costs. Trial courts are given wide latitude to impose conditions such as drug tests, counseling, and supervision when tailoring probation to a specific defendant. I.C. § 35-38-2-2.3(a). In light of this, the text of Section 35-38-2-3[g] is not so far reaching as to impose a heightened standard on the State every time these services require a probationer to pay for foreseeable secondary expenses like gas, public transportation, child care, or food.

Brief of Appellee at 13. In light of my interpretation of Indiana Code section 35-38-2-3(g), however, the State's concerns would be misplaced. First, under such an interpretation, nothing limits a trial court's ability to impose conditions of probation. *See* Ind. Code § 35-38-2-2.3. Trial courts, of course, would remain free to impose conditions of probation within their broad discretion. Second, "financial obligations directly relating to a condition of probation" should not be read as encompassing every imaginable cost. Rather, "directly relating" encompasses any cost whereby the defendant's inability to satisfy the financial obligation prevents the defendant from complying with the conditions of his probation. For example, although ancillary, a defendant's inability to pay for transportation prevents the defendant from complying with the terms of his probation requiring attendance at a specific location. Third and finally, this interpretation does little to impact the State's burden in revocation proceedings—it simply allows a defendant the same opportunity to persuade a trial court that "further imprisonment should not be ordered" where the

violation stems from an inability to satisfy an ancillary financial obligation. *Runyon*, 939 N.E.2d at 617.

[27] Applying my interpretation here, the cost of Martin's transportation for counseling sessions was a financial obligation directly relating to a condition of his probation—i.e., that he attend counseling sessions. Martin admitted to the violation and notified the trial court of his financial inability to satisfy the condition of probation. This admission was sufficient to satisfy the State's burden. Then it became Martin's burden to demonstrate an inability to pay for transportation costs and bona fide efforts to obtain transportation. For the reasons discussed below, I believe Martin satisfied this burden.

## II. Martin's Burden of Proof

[28] Having concluded Indiana Code section 35-38-2-3(g) extends to Martin's transportation issues, I proceed to the question for which I primarily diverge from the majority: whether Martin demonstrated an inability to pay and bona fide efforts to pay. In light of the shared factual basis for the violations, I consider them jointly.

[29] Martin admitted his probation violations and later conceded those admissions were sufficient to satisfy the State's burden of proof and his failure to comply with the terms of his probation was therefore "knowing." Appellant's Br. at 10; *see Runyon*, 939 N.E.2d at 617 (holding a defendant's admission that he failed to make required payments was sufficient to establish by a preponderance of the evidence that his failure to pay was "knowing, if not also intentional").

However, Martin argues that he nevertheless demonstrated an inability to pay and bona fide efforts to pay by way of obtaining employment. I agree.

[30] Although Martin maintained employment at a Wendy's restaurant throughout his time in work release, shortly after his return to probation, Martin found himself homeless and needing to move to Anderson for a place to live. Lacking a driver's license or "reliable transportation to and from [Wendy's]," Martin eventually lost his job. Tr., Vol. 2 at 17. Now without a driver's license, reliable transportation, *or* a job, Martin found himself unable to pay counseling fees or transportation costs. There was no evidence that Martin had a source of income or that he was willfully unemployed and the record reflects that Martin received the aid of a public defender throughout the proceedings and he was in over $3,000 of debt to the judicial system. Having admitted to his inability to satisfy his financial obligations, Martin requested forty-five days before the dispositional hearing "so he can hopefully get the money and get back into treatment." *Id.* at 8.

[31] At the dispositional hearing, Martin testified that he had not only obtained a full-time job in the interim, but also a part-time job. Both jobs were set to begin immediately after the dispositional hearing so while Martin was yet to earn a paycheck or begin payment on his counseling fees, he only needed "[$]60 to get back into the classes." *Id.* at 23. Martin also testified that he had moved to a more accessible area and that the income from his employment would alleviate his transportation issues:

> [Defense Counsel]: Who is going to be able to provide the driving or the transportation if you can't get your license back?
>
> [Martin]: It would be my ex-wife's friend, Jennifer. She brought me over here to court this morning and she lives in Cambridge City and she told me anytime that I needed a ride to get anywhere, as long as I gave her gas money, she could get me anywhere I needed to go.
>
> [Defense Counsel]: And you think that's going to be reliable transportation?
>
> [Martin]: Yes, it will because they're getting ready to become my roommates because they're wanting to move from Cambridge City.

Tr., Vol. 2 at 16.

[32] Rather than idly asserting an inability to pay, Martin offered uncontroverted testimony that he had eliminated his transportation issues and obtained two jobs—a notable accomplishment under Martin's circumstances. Having heard evidence of Martin's inability to pay and his bona fide—now successful—efforts to obtain employment and transportation, the trial court concluded:

> The Court has considered the evidence that was presented today. Of course[,] in regards to its disposition I will take judicial notice of the underlying file and the conviction. I am reviewing the Pre-Sentence Investigation Report that was filed in this case originally back on October 30, 2001, and while today if I looked

at this case in a vacuum and just thought about an individual who is having difficulty getting to his counseling, the plea that I heard today may seem reasonable. But as I look at the case in its totality, it does not any longer appear to me to be reasonable. It should be noted for the record that this is, that the Defendant was convicted in this matter of multiple counts of Child Molest as a Class B felony. The Defendant prior to, prior to this cause had previously attempted to participate in probation for a prior conviction for Sexual Misconduct With a Minor. The probation that he attempted to serve in that cause was violated multiple times. At least two of those multiple times was based upon the Defendant's claimed, or due to the Defendant's inability to complete the counseling that he was required to do. And here we are once again with the same exact situation, the Defendant is not doing the counseling that he is required to do.

This is obviously no minor offense and the Defendant received no minor sentence. The Court originally ordered the Defendant to serve a substantial time in prison and then after a period of time believed that the Defendant could participate back in society by returning him with requirements to do counseling. It was not the Court's requirement that the Defendant live so far away that he could not go to counseling; it was his choice to do that. Whatever other choices he has made that make it difficult for him to go to counseling, that's on you, Mr. Martin. This is not your first time being told to go to counseling, it's not your first time failing to go to counseling even in this cause. This is your second time coming to court under allegations that you have failed to go to counseling. I'm going to revoke your probation, order you to serve all of your previously suspended time in the Department of Corrections.

*Id.* at 23-24.

[33]   While I agree with the majority's statement that "the trial court had no obligation to credit Martin's testimony," I disagree with the majority's conclusion that the "court discounted Martin's excuses in light of his history of 'multiple' probation violations." *See* slip op. at ¶ 12. In fact, the trial court appears to have accepted Martin's testimony.[4] After explaining it had "considered the evidence that was presented today," the court noted that "while today if I looked at this case in a vacuum and just thought about an individual who is having difficulty getting to his counseling, the plea that I heard today may seem reasonable." *Id.* at 23. The trial court then focused on the seriousness of Martin's underlying crimes and his history of probation violations. However, Martin was already sentenced for his crimes and the question before the trial court was whether the present *violations* warranted revocation. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). And, to the extent the trial court relied on Martin's past probation violations, several of those

---

[4] The National Center for State Courts' National Task Force on Fines, Fees and Bail Practices has produced a "bench card for judges" entitled *Lawful Collection of Legal Financial Obligations*, available at https://www.ncsc.org/~/media/Images/Topics/Fines%20Fees/BenchCard_FINAL_Feb2_2017.ashx. The task force recommends that to determine willfulness a court should consider a number of factors, including:

> e. Basic living expenses, including, but not limited to, food, rent/mortgage, utilities, medical expenses, *transportation*, and child support.

*Id.* at 1 (emphasis added). The task force also recommends that after determining that incarceration must be imposed, the Court should make findings about:

> 1. The financial resources relied upon to conclude that nonpayment was willful; or
>
> 2. If the defendant/respondent was not at fault for nonpayment, why alternate measures are not adequate, in the particular case, to meet the state's interest in punishment and deterrence.

*Id.* at 2. Although not required by Indiana Code section 35-38-2-3(g), I believe a trial court's entering of the foregoing findings would help ensure compliance with the statute, protect constitutional principles of fundamental fairness, and significantly aid our review of such cases.

violations involved Martin's inability to satisfy financial obligations, i.e., failure to pay, and there is no evidence that Martin's past failures to attend counseling sessions were not also due to his inability to pay.

[34] Moreover, moving when you are homeless and impoverished can only be considered a "choice" in the most stringent sense of the word. It is axiomatic that convicted felons, and particularly sex offenders, face numerous challenges obtaining suitable housing and employment. It should come as no surprise then that Martin faced difficulty obtaining such necessities. Considering the financial nature of Martin's violations and the fact that he now had housing, employment, and transportation, the trial court could have placed Martin on a "short leash," mandating his strict compliance while saving the remaining balance of Martin's sentence as a sanction for any future violation.

[35] That being said, I am cognizant, of course, of the broad discretion a trial court possesses in revoking probation and determining an appropriate sentence and I also acknowledge that Martin's history of probation violations may well support imposing the remaining balance of his sentence to be served at the Indiana Department of Correction. However, I believe the trial court abused its discretion in finding the violations warranted such a sanction absent consideration of the financial nature of Martin's violations and alternative measures of punishment other than imprisonment. *See Mauch,* 33 N.E.3d at 391-92 (concluding trial court abused its discretion in revoking defendant's probation despite trial court finding defendant's testimony was not credible when there was no indication in the record that he could pay restitution and the

defendant made a sufficient showing of his inability to pay and bona fide efforts to pay). I would therefore vacate the trial court's order and remand for consideration of the financial nature of Martin's violations and for consideration of alternative measures of punishment.