

**FILED**

Dec 12 2016, 6:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard Dobeski, | December 12, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 49A02-1603-CR-440 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable Helen W. Marchal, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 49G15-1507-F6-26077 |

**Altice, Judge.**

### Case Summary

[1] Richard Dobeski appeals following his conviction for failure to register as a sex offender. Under the terms of the applicable statute, Dobeski was required to register "not more than seven (7) days after" his release from prison. Ind. Code § 11-8-8-7(g). On appeal, Dobeski argues that the State presented insufficient

evidence to support his conviction because seven days had not yet elapsed at the time he was arrested.

[2] We reverse and remand with instructions to vacate Dobeski's conviction.[1]

## Facts & Procedural History

[3] In 2008, Dobeski was convicted of class C felony child molesting and class D felony possession of child pornography. He was sentenced to an aggregate term of eleven years. Pursuant to Indiana law, Dobeski was required to register as a sex offender upon his release from custody.

[4] Dobeski was released from New Castle Correctional Facility on July 16, 2015. A "Transportation Detail" form introduced into evidence at trial indicates that a transport van carrying Dobeski and seven other inmates left the prison at 9:30 a.m. *Exhibit Volume*, State's Ex. 5. The form indicates that the van both arrived in and departed from "Indy" at 11:15 a.m., but nevertheless managed to drop off seven inmates while there. *Id.* The van then travelled to Portland, Indiana, where it dropped off its last passenger at 1:30 p.m. before arriving back at the prison at 2:30 p.m. The form does not indicate which inmates were dropped off at which location. No evidence was presented concerning what further

---

[1] We held oral argument in this matter on November 17, 2016, at Perry Meridian High School in Indianapolis. We thank the students, faculty, and staff for their hospitality, and we commend counsel for the quality of their advocacy.

processing, if any, the inmates underwent at their destination before they were free to go.

[5] A sergeant with the Marion County Sheriff's Office checked the sex offender database "sometime after 1:00 in the afternoon" on July 23, 2015, and found that Dobeski had not yet registered. *Transcript* at 10. At some point between 2:00 and 2:30 p.m. that same day, a sheriff's deputy located Dobeski at the Indianapolis Public Library and placed him under arrest for failure to register as a sex offender.

[6] At trial, the State argued that seven days had elapsed between Dobeski's release and his arrest. Specifically, the State argued that the evidence showed that Dobeski was released at 11:15 a.m. on July 16, 2015, and arrested between 2:00 and 2:30 p.m. on July 23, 2015. According to the State, the "days" referred to in the statute were twenty-four-hour periods, beginning with the moment Dobeski was released from prison. In other words, Dobeski had precisely 168 hours to register. Thus, the State argued Dobeski was in violation of the statute when he failed to register by 11:15 a.m. on July 23, 2015. Dobeski, on the other hand, argued that the statute gave him seven full calendar days to register, and that he therefore had until midnight on July 23, 2015 to do so. Consequently, Dobeski argued, his arrest was premature. The trial court ultimately accepted the State's argument. Dobeski now appeals.

## Discussion & Decision

[7] In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

[8] Although the issue in this case is framed as whether the evidence was sufficient to support Dobeski's conviction, that determination turns on our interpretation of a statute. Statutory interpretation presents a question of law that we review de novo. *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind. 2010). When faced with a question of statutory interpretation, we first examine whether the language of the statute is clear and unambiguous. *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007). If it is, we need not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings. *Id*. Where a statute is open to more than one interpretation, it is deemed ambiguous and subject to judicial construction. *Taylor v. State*, 7 N.E.3d 362, 365 (Ind. Ct. App. 2014). Our primary goal in interpreting a statute is to ascertain and give effect to the legislature's intent, and the best evidence of that intent is the statute itself. *Nicoson*, 938 N.E.2d at 663. We presume that the legislature intended for the statutory language to be applied in a logical manner in harmony with the statute's underlying policy and goals.

*Brown v. State*, 912 N.E.2d 881, 894 (Ind. Ct. App. 2009), *trans. denied*. Additionally, "[t]he rule of lenity requires that penal statutes be construed strictly against the State and any ambiguities resolved in favor of the accused, . . . but statutes are not to be overly narrowed so as to exclude cases they fairly cover[.]" *Meredith v. State*, 906 N.E.2d 867, 872 (Ind. 2009) (internal citations and quotation marks omitted).

[9]  I.C. § 11-8-8-7(g) provides in relevant part that "[a] sex or violent offender not committed to the department shall register not more than seven (7) days after the sex or violent offender . . . is released from a penal facility[.]"[2]  In this case, we are asked to determine the manner in which this time should be computed. Dobeski argues that we should apply Ind. Trial Rule 6 to allow him seven full calendar days, excluding the day of his release.  Under this approach, Dobeski would have had until the end of the day on July 23 to register, making his arrest premature.  The State, on the other hand, offers two different possible interpretations.  First, the State argues that we should count seven calendar days *including* the date of Dobeski's release, which would have given Dobeski until the end of the day on July 22 to register.  As an alternative, the State argues that we should count seven 24-hour periods—or 168 hours—from the moment of Dobeski's release, which the State asserts occurred at 11:15 a.m. on July 16.  Thus, according to the State, Dobeski had until 11:15 a.m. on July 23 to register, and his arrest sometime between 2:00 and 2:30 on that date was

---

[2] Failure to register as required by I.C. § 11-8-8-7 is a Level 6 felony.  *See* I.C. § 11-8-8-17.

therefore timely. For the reasons set forth below, we find both of the State's proposed approaches to be inconsistent with Indiana law.

[10] We first note that T.R. 6(A) governs the computation of "any period of time prescribed or allowed by these rules, by order of the court, or by *any applicable statute*[.]" (emphasis supplied). T.R. 6(A) provides as follows:

> In computing any period of time prescribed or allowed by these rules, by order of the court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included unless it is:
>
> > (1) a Saturday,
> >
> > (2) a Sunday,
> >
> > (3) a legal holiday as defined by state statute, or
> >
> > (4) a day the office in which the act is to be done is closed during regular business hours.
>
> In any event, the period runs until the end of the next day that is not a Saturday, a Sunday, a legal holiday, or a day on which the office is closed. When the period of time allowed is less than seven [7] days, intermediate Saturdays, Sundays, legal holidays, and days on which the office is closed shall be excluded from the computations.

[11] Although there is no comparable provision in the criminal rules, Ind. Crim. Rule 21 provides that the rules of trial procedure apply in criminal proceedings

"so far as they are not in conflict with any specific rule adopted by this court for the conduct of criminal proceedings." *See also Ward v. Ind. Parole Bd.*, 805 N.E.2d 893, 893-93 (Ind. Ct. App. 2004) (applying T.R. 6(A) to calculate the 60-day period within which a parole revocation hearing must be held, and consequently excluding date of the triggering event, i.e., date on which the parolee was extradited), *trans. denied*; *Wente v. State*, 440 N.E.2d 512, 513 (Ind. Ct. App. 1982) (applying T.R. 6(A) to compute the defendant's time to file a motion to correct error).

[12]     We further note that the method of computation set forth in T.R. 6(A) is consistent across many sources of law in Indiana. Indeed, the Indiana Rules of Appellate Procedure set forth an identical computation method, as does the statute governing the computation of time under statutes addressing administrative procedures and orders. *See* Ind. App. R. 25; Ind. Code § 4-21.5-3-2. Additionally, Title 34 of the Indiana Code, which governs civil procedure, contains Ind. Code § 34-7-5-1, which provides that "[t]he time within which an act is to be done, as provided in this title, shall be computed by excluding the first day and including the last. If the last day is Sunday, that Sunday shall be excluded." These rules and statutes clearly express the general rule in Indiana that when computing the time for performance of an act which must take place within a certain number of days of some triggering event, the day of the triggering event is not included. To accept the State's argument that the day of Dobeski's release should be included in this computation would mean that

Dobeski had only six full days and one fraction of a day within which to register instead of the "seven (7) days" allowed by I.C. § 11-8-8-7(g).

[13] With respect to the State's argument that we should interpret "seven (7) days" to mean 168 hours from the moment of Dobeski's release, we note that Indiana case law has long defined a "day" as a twenty-four-hour period running from midnight to midnight. *See Kirkpatrick v. King*, 91 N.E.2d 785, 789 (Ind. 1950) (reasoning that "a day begins with the passing of midnight and continues until the succeeding midnight" (quoting *Moag v. State*, 31 N.E.2d 629, 632 (Ind. 1941)); *Benson v. Adams*, 69 Ind. 353, 354 (1879) (explaining that a day "commences at 12 o'clock P.M. and ends at 12 o'clock P.M., running from midnight to midnight"). The State has not directed our attention to any authority supporting its argument that a "day" for the purposes of I.C. § 11-8-8-7(g) is a twenty-four-hour period running from the precise moment of the offender's release. Indeed, the legislature's use of a seventy-two-hour time frame elsewhere in I.C. § 11-8-8-7 indicates that when the legislature intends for a time frame to be calculated as a period of hours rather than full calendar days, it will make that intention clear.[3]

---

[3] Even if we were to accept the State's argument in this regard, the State has not proven the precise time of Dobeski's release. The only evidence presented in this regard is the "Transportation Detail" form discussed above, which indicates that a van carrying Dobeski arrived in "Indy" at 11:15 a.m. and departed at the same time. *Exhibit Volume*, State's Ex. 5. No evidence was presented to establish that Dobeski was one of the seven inmates dropped off in Indianapolis, nor did the State establish that Dobeski was free to go immediately upon his arrival. The difficulties associated with establishing the precise moment of Dobeski's release in this case illustrate the impracticability of the State's approach.

[14] When the legislature enacted I.C. § 11-8-8-7(g), it did so against the backdrop of T.R. 6(A) and other authorities setting forth the commonly accepted method of computing time expressed in days. By declining to set forth a different computation method, the legislature evinced its intent that the "seven (7) days" referenced therein should be calculated in the usual manner. *See Bright PCS/SBA Commc'ns v. Seely*, 753 N.E.2d 757, 758 (Ind. Ct. App. 2001) (noting that "[n]umerous decisions have stated that, where a statute is silent as to the method of computing time, Trial Rule 6(A) will apply"). We do not find the State's alternative constructions of the statute plausible, but even if we did, the most we could say for them is that they suggest that an ambiguity exists in the statute. *See Naugle v. Beech Grove City Schools*, 864 N.E.2d 1058, 1068 (Ind. 2007) (finding ambiguity when asked to consider whether the word "day" as used in the Wage Payment Statute's ten-day rule meant business days or calendar days). To the extent the phrase "seven (7) days" as used in I.C. § 11-8-8-7(g) could be viewed as ambiguous, the rule of lenity would compel us to resolve that ambiguity in Dobeski's favor.

[15] For all of these reasons, we conclude that T.R. 6(A) sets forth the proper method of computing the seven-day time frame set forth in I.C. § 11-8-8-7(g). Accordingly, we must exclude the day of the triggering event—Dobeski's release, which took place on July 16, 2015—and allow Dobeski until the end of the seventh succeeding calendar day—or Thursday, July 23, 2015—to register as a sex offender. When Dobeski was arrested sometime between 2:00 and 2:30 p.m. on that date, "seven (7) days" had not yet elapsed for the purposes of I.C.

§ 11-8-8-7(g). Accordingly, Dobeski's conviction for failure to register as a sex offender is not supported by the evidence.

Judgment reversed and remanded with instructions.

Riley, J. and Bradford, J., concur.