## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 24 2018, 6:46 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| --- | --- |
| David W. Stone IV<br>Anderson, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana |
| | Caroline G. Templeton<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Michael Thompson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 24, 2018<br><br>Court of Appeals Case No.<br>18A-CR-930<br><br>Appeal from the Madison Circuit Court<br><br>The Honorable Mark Dudley, Judge<br><br>Trial Court Cause No.<br>48D01-1105-FB-828 |

**Robb, Judge.**

# Case Summary and Issue

[1] Michael Thompson appeals the trial court's revocation of his placement in work release and its order that he serve eighteen months at the Indiana Department of Correction. On appeal, Thompson presents only one issue for our review: whether the State presented sufficient evidence to support the revocation of his placement in work release. Concluding the State presented sufficient evidence to revoke Thompson's placement in work release, we affirm.

# Facts and Procedural History

[2] On July 12, 2011, Thompson pleaded guilty to burglary, a Class B felony, and theft, a Class D felony. Thompson was sentenced to an aggregate of fourteen years with six years suspended.

[3] Thompson began serving probation on January 9, 2014. By May 2, Thompson was charged with a new criminal offense and the State filed its first notice of violation of probation. The trial court ordered Thompson to serve two years of his previously suspended sentence as a sanction. A second notice of violation of probation was filed on October 20, 2015, and on December 22, 2015, Thompson admitted that he had failed to pay restitution, failed to maintain employment, and failed a drug test. However, the trial court choose not to impose a sanction for these violations.

[4] On July 12, 2016, in response to a June 2016 notice of violation of probation, the trial court found that Thompson had violated the terms of his probation by

failing to comply with his curfew as well as committing the new offenses of criminal mischief and possession of marijuana. This time, the trial court ordered Thompson to serve the remaining four years of his previously suspended sentence, with two and one-half years to be served at the Indiana Department of Correction and the remaining sentence to be served on work release.

[5] Thompson completed his time at the Department of Correction and reported to work release on January 23, 2018. Just over two weeks later, on February 11, a correctional officer observed Thompson sitting on a toilet putting a "green leafy substance into a white cigarette rolling paper." Transcript, Volume I at 21-22. When ordered to stop what he was doing, Thompson "grabbed it with his right hand, stuffed it between his legs and flushed the toilet." *Id*. at 22. Thompson then refused orders to stand up and he continued to wipe himself and flushed the toilet again before standing up. The correctional officer later testified that based on his prior training and experience, the green leafy substance appeared to be either marijuana or K2 spice, both illegal substances constituting violations of work release. Neither a strip search nor an inspection of Thompson's bunk revealed any additional contraband and the State filed a petition to terminate work release the next day, alleging that Thompson violated the terms of work release by committing the new offense of obstruction of justice.

[6] On February 13, Thompson's case manager, Tyler Gross, pulled Thompson for a meeting. Gross later testified that Thompson was "sweaty [and] stumbling a

little bit." *Id.* at 9. Thompson was shaking, had bloodshot eyes, avoided eye contact, and could not "sit still[,]" all of which led Gross to conclude that Thompson "seemed like he was intoxicated under something[,]" most closely resembling the effects of K2 spice. *Id.* at 10. Gross called an ambulance for Thompson, but after Thompson refused treatment, Gross obtained an order to incarcerate him and he was subsequently transferred to the jail. The State amended its petition to terminate work release by adding an allegation that Thompson was intoxicated during his February 13 meeting with Gross.

[7] The trial court conducted a hearing on March 16, concluding the testimony presented by the State was credible and that it therefore met its burden as to both allegations. The trial court revoked the remainder of Thompson's term in work release and ordered Thompson to return to the Department of Correction to serve the remaining balance of his sentence. Thompson now appeals.

## Discussion and Decision

### I. Standard of Review

[8] We review a decision on a petition to revoke placement in a community corrections program just as we review decisions on a petition to revoke probation. *Johnson v. State*, 62 N.E.3d 1224, 1229 (Ind. Ct. App. 2016). Both community corrections and probation are matters of grace granted by the trial court and we therefore review their decisions for abuse of discretion. *Id.* Furthermore, revocation is a civil matter and the State need only prove the alleged violations by a preponderance of the evidence. *Id.* An abuse of

discretion occurs "only where the trial court's decision is clearly against the logic and effect of the facts and circumstances." *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018). We will not reweigh the evidence or reconsider witness credibility. *Dokes v. State*, 971 N.E.2d 178, 179 (Ind. Ct. App. 2012). Rather, we consider only the evidence most favorable to the trial court's judgment to determine if there was substantial evidence of probative value to support the court's ruling. *Id.*

# II. Revocation

[9] Thompson contends the State failed to present sufficient evidence to support the allegations of obstruction of justice and intoxication to justify revoking his work release. We address each of Thompson's arguments in turn.

## A. Obstruction of Justice

[10] We begin with the State's allegation of obstruction of justice. Indiana Code section 35-44.1-2-2(3) provides that any person who "alters, damages, or removes any record, document, or thing, with intent to prevent it from being produced or used as evidence in any official proceeding or investigation" commits obstruction of justice, a Level 6 felony.

[11] At the probation revocation hearing, the State presented the testimony of a correctional officer who stated that he observed Thompson sitting on a toilet putting a "green leafy substance into a white cigarette rolling paper." Tr., Vol. I at 21-22. When ordered to stop what he was doing, Thompson "grabbed it with his right hand, stuffed it between his legs and flushed the toilet." *Id.* at 22.

Thompson then refused orders to stand up and he continued to wipe himself and flushed the toilet a second time before complying with orders to stand up. Thompson denied this allegation but the trial court concluded that it believed the correctional officer, despite the conflict with Thompson's denial, and that the State had therefore met its burden of proof.

[12] On appeal, Thompson argues that "[f]lushing something does not fall under the language of the statute [because it] does not refer to the *destruction* of any thing." Brief of Appellant at 11 (emphasis added). In support thereof, Thompson argues:

> The American Heritage Dictionary of the English Language (1969) defines "alter" as "to change or make different; modify[.]" It defines "damage" as being "impairment of the usefulness or value of person or property; loss; harm[.]" "Remove" is defined as being :to [sic] convey from one place to another."

*Id.*

[13] We find Thompson's argument to be disingenuous. After all, flushing a substance down a toilet satisfies all three of the definitions which Thompson now provides. *See Mullins v. State,* 717 N.E.2d 902, 904 (Ind. Ct. App. 1999) (concluding the defendant's argument that he could not be convicted of obstruction of justice because when he placed a "white and powdery hard substance" into his mouth "he was not under arrest at the time . . . nor did he know that a law enforcement officer was about to start an investigation" was disingenuous). Mixing a substance with water is sufficient to "alter" or

"damage" the substance because it changes or modifies it and such mixture can thereafter impair the usefulness of the substance. Ind. Code § 35-44.1-2-2(3); Br. of Appellant at 11. Furthermore, one does not require a sophisticated understanding of plumbing to understand that what is flushed down a toilet is "convey[ed] from one place to another." Br. of Appellant at 11.

[14] Although, rather surprisingly, we have never addressed whether flushing a substance down a toilet is sufficient to constitute obstruction of justice, other states that have addressed this question in the context of similar statutes have reached the same conclusion. *See State v. Majors,* 318 S.W.3d 850, 860 (Tenn. 2010) (noting "[t]he purpose of flushing a commode is to dispose of the contents in the toilet bowl"); *McKenzie v. State*, 632 So.2d 276, 277 (Fla. Dist. Ct. App. 1994) (concluding that "[s]wallowing a substance such as this surely constitutes an intent to 'alter, destroy, conceal, or remove' as clear as any act could, including flushing it down a toilet"); *Commonwealth v. Govens*, 632 A.2d 1316, 1328-29 (Pa. Super. Ct. 1993) (holding that flushing drugs down toilet while police knocked at door constituted the equivalent of obstruction of justice); *State v. Papillion*, 556 So.2d 1331, 1336 (La. Ct. App. 1990) (also holding flushing drugs down the toilet with police at the front door constituted obstruction of justice). Accordingly, we conclude flushing a substance down a

toilet is sufficient to constitute obstruction of justice as contemplated by the language of Indiana Code section 35-44.1-2-2(3).[1]

[15] Thompson further argues the "destruction of the substance did not and could not obstruct justice since neither production of the suspected drug nor a chemical analysis of it is required to establish its nature." Br. of Appellant at 11. Again, we are left unconvinced by Thompson's argument. We find nothing about a plain text reading of Indiana Code section 35-44.1-2-2(3) requiring the potential evidence "alter[ed], damage[d], or remove[d]" be essential to a later official proceeding or investigation. To the contrary, the statute prohibits any person from "alter[ing], damag[ing], or remov[ing] *any* record, document, or thing, *with intent to prevent it from being produced or used as evidence*[.]" *Id.* (emphasis added). Accordingly, the State need not demonstrate the potential evidence was essential to its case, only that the defendant altered, damaged, or removed the potential evidence "with intent to prevent it from being produced or used as evidence in any official proceeding or investigation." *Id.*

---

[1] Although we conclude the language at issue here is "clear and unambiguous" so we do not need to apply any rules of statutory construction, *Dobeski v. State*, 64 N.E.3d 1257, 1259-60 (Ind. Ct. App. 2016), we nevertheless note that interpreting Indiana Code section 35-44.1-2-2(3) pursuant to Thompson's argument would effectively hold that so long as a defendant completely destroys potential evidence, there is insufficient evidence to sustain a conviction of obstruction of justice. Such an interpretation would lead to absurd results, *Anderson v. Gaudin*, 42 N.E.3d 82, 85 (Ind. 2015) (explaining that we "do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result"), and would be inconsistent with the statute's underlying policy and goals, *State v. CSX Trans., Inc.*, 673 N.E.2d 517, 519 (Ind. Ct. App. 1996) (explaining that we presume the General Assembly "intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals").

Here, Thompson's act of flushing the "green leafy substance" down the toilet destroyed the potential evidence and thereby prevented it from being produced as evidence at the probation revocation hearing. Tr., Vol. I at 21. The fact Thompson took this action immediately after the correctional officer ordered him to stop what he was doing and hand over the substance indicated his intent to avoid seizure of the potential evidence by flushing it away. Therefore, we conclude the evidence was sufficient to support the revocation of Thompson's placement in work release for committing the crime of obstruction of justice. *See Smith v. State*, 809 N.E.2d 938, 943 (Ind. Ct. App. 2004) (holding uncorroborated testimony that the defendant had handed two bags of precursors to another individual in order for them to be thrown from the car was sufficient to prove that the defendant "helped to remove the methamphetamine precursors from the car with the intent to prevent them from being produced or used as evidence in an official proceeding or investigation"), *trans. denied*.

## B. Intoxication

Next, Thompson argues there was insufficient evidence to support the trial court's finding that Thompson was intoxicated in violation of the rules of his work release. However, Thompson's arguments on this point amount to nothing more than an invitation to reweigh the evidence and the credibility of the witnesses. Mindful of our standard of review, we must decline this invitation and affirm the trial court. *Dokes*, 971 N.E.2d at 179. Thus, we

conclude the evidence was sufficient to support the termination of Thompson's placement in work release for intoxication.

# Conclusion

[18] For the foregoing reasons, we affirm the trial court's revocation of Thompson's placement in work release and its order that he serve the remaining balance of his sentence at the Department of Correction.

[19] Affirmed.

Baker, J., and May, J., concur.