

FILED

Mar 15 2019, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie H. Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Chad E. Adams,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 15, 2019

Court of Appeals Case No.
18A-CR-1544

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1708-F5-103

**Barteau, Senior Judge.**

# Statement of the Case

Chad E. Adams appeals from his four-year aggregate sentence after pleading guilty to one count of Level 5 felony carrying a handgun with a prior felony,[1] contending that the trial court improperly calculated his accrued time and that his sentence is inappropriate in light of the nature of the offense and the character of the offender.  We affirm in part, reverse in part and remand with instructions.

# Issues

Adams presents the following restated issues for our review:

> I.  Did the trial court improperly calculate Adams' accrued time by failing to recognize the time he spent in jail after his arrest and before posting bond later that same day?

> II.  Is Adams' sentence inappropriate in light of the nature of the offense and the character of the offender?

# Facts and Procedural History

In June of 2017, Adams was living in an apartment with his girlfriend, Melissa Lagoy.  Lagoy owned two vehicles and one of them was a van.  The van did not have a valid license plate or registration and was not insured.  No one had driven the van for several months prior to the date of the offense.  Among the

---

[1] Ind. Code § 35-47-2-1(e)(2)(B) (2014).

many things Lagoy kept in the locked van was a handgun placed under the driver's seat instead of in the apartment where children also lived. Another reason for the placement of the handgun was Adams' 2006 felony conviction for possession of marijuana which prevented him from legally possessing a firearm.

[4] On the evening of June 16, 2017, Adams was home when he received a call that Lagoy and a friend had car trouble and were stranded. Adams entered Lagoy's van and left in it to bring her home.

[5] Approximately two minutes after Adams began driving the van, a local police officer recognized him. The officer initiated a traffic stop because he knew that Adams did not have a valid driver's license. During the stop, the officer noticed the firearm under the driver's seat. Lagoy arrived on foot at the scene of the traffic stop and informed the officer that the firearm belonged to her.

[6] Adams was arrested and charged with unlawful possession of a firearm with a prior felony as a Level 5 felony along with other charges. Adams entered into a plea agreement pursuant to which he pleaded guilty to the Level 5 felony in exchange for dismissal of the other counts. After a hearing, the trial court sentenced Adams to an aggregate term of four years with one and a half years executed in the Indiana Department of Correction, one and a half years executed on community corrections, and one year of supervised probation. Adams now appeals.

# Discussion and Decision

## I. Calculation of Time

[7]   Adams challenges the trial court's failure to recognize the time Adams spent in jail prior to sentencing. Adams was arrested and imprisoned in the county jail on June 17, 2017 and was confined, according to his statement made during a colloquy with the trial court at the sentencing hearing, for approximately six to eight hours before he was able to post bond. Tr. p. 27. His pre-sentence investigation report credits him with one actual jail day from June 17, 2017 to June 17, 2017. Appellant's App. Vol. 2, p. 62.

[8]   Despite the recommendation in the pre-sentence investigation report and Adams' statement of the time he was confined prior to bonding out, the trial court refused to recognize one day of actual jail time because Adams had not been in jail for "twenty-four hours," which the court noted was its view of the law until notified of caselaw to the contrary. Tr. pp. 27-28.

[9]   Without citation to authority, the State argues that "[a]lthough the award of credit is mandatory, it remains within the trial court's discretion to make the factual determination of whether the person in fact spent a *day* in prison before awarding the credit." Appellee's Br. p. 9. (emphasis added). The State's position is that this factual determination is reviewed for an abuse of discretion, citing *Harding v. State*, 27 N.E.3d 330, 331 (Ind. Ct. App. 2015). Additionally, the State contends that "[g]iven that the Defendant failed to establish the length of time he was actually in jail pending his release, the trial court did not abuse

its discretion in not awarding Defendant credit time for one full *day*." Appellee's Br. pp. 9-10. (emphasis added). This argument is made despite Adams' statement at the sentencing hearing and the calculation included by probation in the pre-sentence investigation report. We also pause to observe that the applicable statute refers to *time* and not to *days*.

[10] "'Because pre-sentence jail time credit is a matter of statutory right, trial courts generally do not have discretion in awarding or denying such credit.'" *Perry v. State*, 13 N.E.3d 909, 911 (Ind. Ct. App. 2014) (quoting *Molden v. State*, 750 N.E.2d 448, 449 (Ind. Ct. App. 2001)). On the other hand, sentencing decisions not mandated by statute remain within the discretion of the trial court and will be subject to reversal only upon a showing of an abuse of that discretion. *Perry*, 13 N.E.3d at 911. We have often stated what constitutes an abuse of discretion and do so again here. A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* (citing *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218).

[11] Because Adams was imprisoned prior to trial on an allegation that he committed a Level 5 felony, he was assigned to Class B for the calculation of accrued and credit time. Ind. Code § 35-50-6-4 (2016). Indiana Code section 35-50-6-0.5(1) (2015) defines accrued time as "the amount of time that a person is imprisoned or confined." Credit time is defined as "the sum of a person's

accrued time, good time credit, and educational credit." Ind. Code § 35-50-6-0.5(2) (2015).

[12] In *Purdue v. State*, 51 N.E.3d 432, 436 (Ind. Ct. App. 2016), a panel of this Court stated as follows:

> Indiana treats pre-sentence imprisonment as a form of punishment. By enacting statutes that award credit for pre-sentencing confinement, the General Assembly sought to implement the guarantee of common law and the Fifth Amendment to the U.S. Constitution against double jeopardy. Further, with an eye toward avoiding equal protection violations, the statutes were drafted to equalize total confinement time among inmates serving identical sentences for identical offenses by allowing those who cannot post bail before sentencing to be given credit towards their sentence for pre-sentence imprisonment or confinement. Accordingly, during sentencing, a trial court must strive to reach the balance between granting too little or too much credit time, while keeping in mind that the grant of credit time, as remedial legislation, should be liberally construed in favor of those benefitted by the statute.

(internal citations and quotations omitted). Indeed, the panel in *Purdue*, noted that "the intent of the statute [Ind. Code § 35-50-6-0.5] was to provide clarification in the area of credit time." 51 N.E.3d at 433 n.3; *see also*, Ind. Code § 35-50-6-0.6 (2015) (change of terms is intended for clarification). In *Purdue*, as is pertinent to this appeal, the defendant received credit for three days of confinement which lasted only forty-eight hours spanning between January 29 through January 31, 2015. 51 N.E.3d at 434.

[13]     The State cites *Dobeski v. State*, 64 N.E.3d 1257 (Ind. Ct. App. 2016) in support of the trial court's ruling. In *Dobeski*, the central issue was how to calculate the passage of time. The statute in that case required that the defendant register as a sex offender not more than seven *days* after his release from a penal facility. Ind. Code § 11-8-8-7(g) (2013) (emphasis added). Dobeski argued the evidence was insufficient to support his conviction for failure to register as a sex offender because seven days had not yet elapsed at the time he was arrested. The State had argued that the "days" referred to in the statute were twenty-four-hour periods, beginning with the moment Dobeski had been released from prison. The trial court agreed with the State and Dobeski appealed.

[14]     On appeal, Dobeski argued that Indiana Trial Rule 6(A) applied. That trial rule governs the computation of time, and provides:

> In computing any period of time prescribed or allowed by these rules, by order of the court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed is to be included unless it is:
>
> (1) a Saturday,
>
> (2) a Sunday,
>
> (3) a legal holiday as defined by state statute, or
>
> (4) a day the office in which the act is to be done is closed during regular business hours.

In any event, the period runs until the end of the next day that is not a Saturday, a Sunday, a legal holiday, or a day on which the office is closed. When the period of time allowed is less than seven [7] days, intermediate Saturdays, Sundays, legal holidays, and days on which the office is closed shall be excluded from the computations.

T.R. 6(A).

[15] This rule of trial procedure was considered in *Dobeski* because Indiana Criminal Rule 21 provides that the rules of trial procedure apply in criminal proceedings when they are not in conflict with any specific rule adopted for the conduct of criminal proceedings. Further support was found in the computation of time used in the Indiana Rules of Appellate Procedure and the computation set out by statute for administrative procedures and orders. *See Dobeski*, 64 N.E.3d at 1260-61.

[16] Further, we held that "Indiana case law has long defined a 'day' as a twenty-four-hour period running from midnight to midnight." *Id.* at 1261. "Indeed, the legislature's use of a seventy-two-hour time frame elsewhere in I.C. § 11-8-8-7 indicates that when the legislature intends for a time frame to be calculated as a period of hours rather than full calendar days, it will make that intention clear." *Id.* The trial court's computation of time was reversed and remanded because the rule of lenity required an interpretation of the statute construing the term day to be a calendar day instead of a twenty-four-hour period. *Id.* at 1262.

[17]     The State's argument here is that under that reasoning set forth in *Dobeski* the first day should not be included and that Adams was not entitled to any accrued time.

[18]     In contrast, Adams cites to the Indiana Department of Correction Adult Offender Classification Policy Manual, which provides as follows:

> Credit Time Calculation
>
> 1.  An offender receives incarceration credit, and credit time on the sentence for the day of release from a Department facility to parole or court jurisdiction.

Indiana Department of Correction, *Adult Offender Classification Policy Manual*, Section (VII)(L)(1)-Credit Time Calculation, available at https://www.in.gov/idoc/3264.htm (last visited February 26, 2019). The argument follows that if the first day does not result in credit time under the State's citations to authority, the release date should count under the DOC policy manual.

[19]     In this case, however, the governing statute refers to the amount of "time" that a person is imprisoned or confined. Ind. Code § 35-50-6-0.5. Hence, there is no reference to days, as argued by Adams, or hours, as argued by the State. Further, the term "time" is not defined elsewhere in Title 35, Article 50. As such, we deem the statutory reference to time to be ambiguous.

[20]     "Under well-established principles of statutory interpretation, a statute is ambiguous when it allows more than one reasonable interpretation." *Day v.*

*State*, 57 N.E.3d 809, 813 (Ind. 2016). Adams and the State have vigorously argued in favor of their opposing interpretations of the statute. If a statute is deemed ambiguous, then courts on review resort to the rules of statutory interpretation to fulfill the legislature's intent.[2] *Id.* "In criminal cases, this includes the rule of lenity–interpreting the statute in the defendant's favor as far as the language can reasonably support." *Id.*

[21] Here, Adams' liberty was deprived, by his undisputed account, for between six and eight hours. The trial court did not recognize Adams' loss of liberty for that time. Further, we can only imagine the burden placed upon the Department of Correction if required to "clock in" a defendant upon his or her arrest and then "clock out" that defendant upon the posting of bond for purposes of determining the "time" spent in pre-sentence incarceration to be recognized later against any sentence imposed. We conclude that the rule of lenity informs us to implement the intent of the legislature by reversing the decision of the trial court and remanding the matter to the trial court for the issuance of an order awarding Adams with one day of accrued time.

## II. Inappropriate Sentence

[22] Adams claims that his sentence is inappropriate in light of the nature of the offense and the character of the offender. Adams specifically requests that this

---

[2] We invite the legislature to determine whether a more precise definition of "time" is needed as respects accrued and credit time given the arguments presented here.

Court revise his sentence to "an advisory term of three (3) years, with one (1) year executed in the Department of Correction, one (1) year [of] community corrections, and one (1) year on probation." Appellant's Br. p. 20. The sentencing range for a Level 5 felony is a fixed term of imprisonment between one and six years with the advisory sentence being three years. Ind. Code § 35-50-2-6(b) (2014).

[23] Our Supreme Court has stated the following about our role in the appellate review of sentences.

> Even where a trial court has not abused its discretion in sentencing, the Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decision. Appellate courts implement this authority through Indiana Appellate Rule 7(B), which provides that we may revise a sentence if after due consideration of the trial court's decision we find the sentence is inappropriate in light of the nature of the offense and the character of the offender.

*Eckelbarger v. State*, 51 N.E.3d 169, 170 (Ind. 2016) (internal citations and quotations omitted). "The defendant bears the burden of persuading the Court that [his] sentence is inappropriate." *Phipps v. State*, 90 N.E.3d 1190, 1198 (Ind. 2018).

[24] Case law further instructs that "[s]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in

a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[25] "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. "The principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Id.* at 1225.

[26] We first evaluate whether the sentence imposed is supported by evidence of the nature of the offense. Adams knew that the van was not properly registered, plated, or insured. He was also aware that there was a gun stored under the driver's seat and that there was spice[3] in the van. Further, Adams knew that he was not allowed to possess a gun because he was a felon. Additionally, he knew that he did not have a valid driver's license. Nonetheless, Adams chose to drive the van containing the spice and a handgun. This behavior is

---

[3] Spice is also known by the street names "fake weed, moon rocks, and skunk" according to the National Institute on Drug Abuse for Teens, and is a mix of herbs, or shredded plant material and manmade chemicals with mind-altering effects. https://teens.drugabuse.gov/drug-facts/spice (last visited on February 21, 2019).

demonstrative of a disregard for the law and an indifference to the potential consequences of his actions.

[27] Next, we evaluate whether the sentence imposed is warranted given Adams' character. On review, analysis of the character of the offender involves a "broad consideration of a defendant's qualities." *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014). "The character of the offender is shown by the offender's life and conduct." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011).

[28] The record reveals that Adams' prior criminal history consists of several prior convictions spanning over more than a decade. He has multiple misdemeanor and felony convictions for drug offenses and was offered treatment on at least three prior occasions. Several petitions to revoke probation were filed against him and he was unsatisfactorily discharged from probation. He then continued to engage in criminal activity resulting in convictions. Again, he violated probation for those convictions and was unsatisfactorily discharged from probation. Further, while out on bond after pleading guilty in the current case, Adams was charged with and convicted of driving while suspended as a Class A misdemeanor.

[29] The trial court stated the following during sentencing:

> On the aggravating side, one thing that I note in this case is your character toward probation. Your attitude toward probation is lousy. Right from the very beginning, you [sic] the probation officer reports that you arrived but your packet was not filled out.

You advi-, the probation officer advised you to turn the packet in completely filled out and do a telephone interview. Then you did turn your packet in. After reviewing the packet, the officer still noticed there was not completed, several questions were not complete. Specifically, those pertaining to family. When asked about the unanswered questions over the telephone, you said I thought all that stuff was crap. That's the attitude you're showing to probation. And so, if you're going into it with that kind of an attitude, it does not bode well for me in considering that you might be a good candidate for probation, if you're going into it thinking that this is a lot of crap. I also note that you had the opportunity, you also took the opportunity to indicate that in the writing on the pre-sentence report when you talked about the charge, you said gun charge fifteen years ago, felon, because they cannot get me with a ten-year law. Crap! Is what you wrote to me. So, your overall attitude here about this case and about the, overall seriousness of this offense, the role that probation, the role that the Court has, is lousy. And, those are your, based upon your own words. I also note that you were not completely forthright and honest with probation. When you were asked about your children, you refused to report that. You didn't report anything about wages. And you declined to answer about when, about the issue of what drugs, what role drugs played in this case. Although, obviously, there were some drugs found in the car and your response at least at the time of the arrest was, I don't smoke it, I deal it. So, there is some evidence that you could have, been at least more forthcoming on that.

Tr. pp. 52-53.

[30]    The trial court did observe that Adams pleaded guilty to the Level 5 felony in exchange for the dismissal of the other charges but noted that Adams did benefit from the agreement. The trial court also acknowledged Adams' work history. However, when considering the aggravating and mitigating

circumstances, the trial court concluded that Adams' criminal history warranted a slightly enhanced executed term. We agree with the trial court's assessment and conclude that Adams has not met his burden of persuading us that his sentence is inappropriate in light of the nature of the offense and the character of the offender.

# Conclusion

[31] For the reasons stated above, we affirm the judgment of the trial court in part, reverse in part, and remand with instructions to issue a corrected sentencing order recognizing the correct amount of time, one day, during which Adams was deprived of his liberty prior to sentencing.

[32] Affirmed in part, reversed in part, and remanded with instructions.

Najam, J., and Bailey, J., concur.