## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2020, 9:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Catherine Brizzi
Deputy Attorney General
Indianapolis, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

Henry D. Bates,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 30, 2020

Court of Appeals Case No.
20A-CR-1110

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

Trial Court Cause No.
20D03-1608-F3-37

**Tavitas, Judge.**

# Case Summary

Henry D. Bates appeals his sixteen-year sentence, pursuant to a guilty plea, for robbery with a deadly weapon, a Level 3 felony. We affirm.

# Issues

Bates raises two issues on appeal, which we restate as follows:

> I.     Whether the trial court abused its sentencing discretion by considering an improper aggravating factor and overlooking a significant mitigating factor.
>
> II.    Whether Bates' sentence is inappropriate in light of the nature of his offense and his character.

# Facts

Shortly after noon on July 11, 2016, Bates and his nephew, Eddie Bates ("Eddie"), robbed a Dollar General Store in Elkhart, Indiana. Theresa Palmer was working the cash register during the robbery. Bates walked behind the counter, told Palmer that the store was being robbed, and warned that Bates had a knife. Bates then placed "a fairly long, probably around six- to eight-inch knife" to the back of Palmer's neck, demanded that Palmer open the cash register, and fled with the cash register's contents.[1] Tr. Vol. II p. 182. Bates was under the influence of synthetic marijuana when he committed the offense.

---

[1] After a failed attempt to obtain the store's surveillance footage, Eddie stole money from the store's security room and fled.

The store's video surveillance system captured the entire robbery and depicted Bates with the knife.

[4] On August 24, 2016, the State charged Bates with robbery with a deadly weapon, a Level 3 felony. On May 25, 2017, Bates pleaded guilty as charged. In exchange for Bates' guilty plea, the State agreed not to file an habitual offender information against Bates due to Bates' record of cooperation with law enforcement as a confidential informant ("CI").[2]

[5] The trial court conducted Bates' sentencing hearing on November 14, 2017. Bates expressed remorse and attributed his misconduct to being "off [his] med[ication]s" for paranoid schizophrenia. *Id*. at 176. In seeking a minimum sentence, defense counsel argued that Bates' mental health, including his paranoid schizophrenia diagnosis, was a mitigating factor and provided Bates' mental health treatment jail records to the trial court. Defense counsel further argued as follows:

> This crime that . . . Mr. Bates is being sentenced on here today is a result mostly . . . of his mental health status. He knows he did armed rob [sic] that [ ] store. [ ] He watched the video of

---

[2] At the sentencing hearing, the prosecutor remarked that "the State gave [Bates] a huge break, because he's well eligible, more than double, to be a[n] habitual criminal offender"; and "but for the fact that [the State] didn't file the habitual [offender enhancement, Bates would] be facing 20 more years." Tr. Vol. II pp. 183, 184. Regarding Eddie, however, the State proceeded with filing the habitual offender count, and Eddie received a thirty-six-year sentence.

him[self] doing it. I do not believe that this is . . . something that he would normally do if he were taking his medication . . . .

*Id*. at 36.

[6] Next, in seeking a near-maximum sentence, the prosecutor introduced still images of the robbery that depicted Bates holding the long knife to Palmer's neck and reported the State's favorable charging treatment of Bates as a CI. Additionally, the State argued:

> . . . I absolutely guarantee you Henry Bates was on drugs when he committed this offense. [ ] I am not disputing that Henry Bates sits here with some mental issues. . . .[B]ut what I am going to say is his continued abuse of very serious mind-altering drugs does him no favors. And for him to say[,] "I never would have done this if I wasn't on my meds," is completely belied by his criminal record. This is not the first crime that he's committed, where he can come in and say[,] "I was off of my meds and I made a bad mistake," because he has a record that consists of over a dozen convictions. . . .[F]rom the State's perspective, he was going to commit this crime regardless.

*Id*. at 40-41.

[7] In open court, the trial court identified the following mitigating sentencing factors: (1) Bates' guilty plea; (2) expression of remorse; (3) service as a CI; and (4) "[Bates'] comments and letters and comments of counsel." Bates' App. Vol. II p. 71. The trial court found the following aggravating factors: (1) Bates' extensive criminal history; (2) Bates' commission of theft and violent crimes dating back to 1977; (3) Bates was under the influence of synthetic marijuana

when he committed the offense; (4) Bates' history of alcohol and drug abuse; (5) Bates' use of a deadly weapon in the robbery, causing Palmer to fear for her life; and (6) the presence of children in the store during the robbery. The trial court stated: "[T]he aggravating circumstances do far, far outweigh the mitigating circumstances, and all the mitigating factors taken as a whole do not outweigh even one of the aggravators; so, . . . an aggravated sentence . . . is appropriate." Tr. Vol. II p. 47.

[8] The trial court sentenced Bates to sixteen years in the Department of Correction ("DOC"), with three years ordered suspended to probation. The trial court also recommended that Bates receive mental health treatment in the DOC and undergo a mental health assessment as a condition of probation. Notably, the trial court's judgment of conviction, entered on November 17, 2017, omitted the "presence of children" aggravating factor. Bates now appeals.[3]

## Analysis

[9] Bates challenges the trial court's exercise of its sentencing discretion. "[S]ubject to the review and revise power [under Indiana Appellate Rule 7(B)], sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007); *Phipps v. State*, 90 N.E.3d 1190, 1197 (Ind. 2018). An abuse occurs only if the decision is clearly

---

[3] This Court granted Bates' petition for permission to file a belated notice of appeal on May 13, 2020.

against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Schuler v. State*, 132 N.E.3d 903, 904 (Ind. 2019). A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Ackerman v. State*, 51 N.E.3d 171, 193 (Ind. 2016).

[10] This Court presumes that a court that conducts a sentencing hearing renders its decision solely on the basis of relevant and probative evidence. *Schuler*, 132 N.E.2d at 905. "When an abuse of discretion occurs, this Court will remand for resentencing only if 'we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.'" *Ackerman*, 51 N.E.3d at 194 (quoting *Anglemyer*, 868 N.E.2d at 491).

### *Aggravating Factors*

[11] It is well settled that a single aggravating factor is adequate to justify an enhanced sentence. *Buford v. State*, 139 N.E.3d 1074, 1081 (Ind. Ct. App. 2019). If a trial court abuses its discretion by improperly considering an aggravating factor, we remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it

properly considered reasons that enjoy support in the record." *Anglemyer*, 868

N.E.2d at 491; *Ackerman,* 51 N.E.3d at 194.

### *A. Nature and Circumstances of the Crime*

[12]     Bates first argues that the trial court improperly considered an element of the

crime as an aggravating circumstance —namely, that Bates put Palmer in fear.

Indiana Code Section 35-42-5-1(a) provides:

> Except as provided in subsection (b)[4], a person who knowingly
> or intentionally takes property from another person or from the
> presence of another person:
>
> > (1) by using or threatening the use of force on any person;
> > or
>
> > (2) *by putting any person in fear*;
>
> commits robbery, a Level 5 felony.  However, the offense is a
> Level 3 felony if it is committed while armed with a deadly
> weapon . . . .

(Emphasis added).

[13]     A similar argument was raised in *Gomillia v. State*, 13 N.E.3d 846, 852-53 (Ind.

2014).  On appeal, Gomillia argued that the trial court improperly considered

an element of his offense—placing the victim in fear—as an aggravating factor.

---

[4] Indiana Code Section 35-42-5-1(b) is not pertinent here.

In upholding the enhanced sentence, our Supreme Court held that "[w]here a trial court's reason for imposing a sentence greater than the advisory sentence includes material elements of the offense, *absent something unique about the circumstances that would justify deviating from the advisory sentence*, that reason is 'improper as a matter of law.'" *Gomillia*, 13 N.E.3d at 852-53 (quoting *Anglemyer,* 868 N.E.2d at 491) (emphasis added). The Court found, notwithstanding flaws[5] in Gomillia's argument, that "the nature and circumstances of the crime included . . . the leadership role Gomillia played[ ], as well as the terror the victim suffered[,]" both of which were "appropriate reasons justifying a sentence greater than the advisory term." *Id*. at 853.

[14] Here, we find that the statutory element of placing a person in fear was already met when Bates told Palmer that he and Eddie were robbing the store and that Bates had a knife. Bates, however, did not stop at brandishing a knife and demanding the contents of the cash register; rather, Bates terrorized Palmer when he stepped behind her and placed his large knife to her neck. We find that Bates' act of further menacing Palmer with the knife constitutes "*something*

---

[5]The *Gomillia* Court observed:

> First "fear" . . . is not an element of criminal deviate conduct. It is an element of robbery as a class C felony. But here Gomillia pleaded guilty to class B felony robbery; and in any event the trial court imposed the advisory sentence for this offense. Second, we do not read the trial court's general reference to "[t]he threats to this lady," as necessarily equating to the "threat of force" element in the criminal deviate conduct conviction.

*Gomillia*, 13 N.E.3d at 853 (internal citation omitted).

*unique about the circumstances*" that justified the enhancement of Bates' sentence. *See id*. The trial court's remarks at sentencing that "[y]ou h[e]ld a knife to [Palmer's] neck. She d[id]n't know . . . if you[ we]re just going to slit her throat when you g[o]t the money" evidence the trial court's finding that Bates' actions during the robbery went beyond the statutory elements necessary for the robbery conviction. *See* Tr. Vol. II p. 47.

[15] Based on the foregoing, the trial court did not improperly consider an element of the offense as an aggravating factor; accordingly, we conclude that the trial court did not abuse its sentencing discretion in this regard.

### B. Presence of Children

[16] Bates also argues that the trial court found "an aggravator that was completely unsupported by the record[,]" namely, the presence of children during Bates' commission of the crime. Bates' Br. p. 4. The State concedes that "there was no evidence in the record regarding the presence of children when the robbery occurred[,]" but maintains that the trial court "did not rely on this aggravator" in imposing Bates' sentence. *See* State's Br. p. 9.

[17] We acknowledge that this aggravating factor was unsupported and was improperly before the trial court.[6] Further, we observe that, although the trial court included "the presence of children" aggravator in its oral sentencing

---

[6] We note that the prosecutor made the initial reference to the presence of children during Bates' commission of the crime. *See* Tr. Vol. II p. 44. The factual basis for Bates' guilty plea, however, made no mention of the presence of children.

remarks on November 14, 2017, the trial court omitted that aggravator from its judgment of conviction on November 17, 2017, *while leaving Bates' maximum sentence unchanged*. This action evinces both the trial court's: (1) recognition of its error in identifying an improper aggravating factor; and (2) intention to impose a maximum sentence notwithstanding the errant aggravator. We agree with the State that the trial court did not rely on the "presence of children" aggravator in imposing sentence.

[18] Ultimately, the trial court's oral identification of the improper aggravating factor was harmless error because the trial court found five other valid aggravating factors. *See Catt v. State*, 749 N.E.2d 633, 639 (Ind. Ct. App. 2001) (finding that trial court's improper consideration of two aggravating factors was harmless error where the trial court found other valid aggravating factors); *see also Kelp v. State*, 119 N.E.3d 1071, 1073-74 (Ind. Ct. App. 2019) (affirming sentence despite trial court's consideration of an improper aggravating circumstance); *and see Catt*, 749 N.E.2d at 639 (holding that, even if a trial court finds an improper aggravating factor, a sentence enhancement may still be upheld if other valid aggravating factors exist). In light of multiple valid and unchallenged aggravating factors that each, alone, support an enhanced sentence, we conclude that the trial court did not commit reversible error by its oral identification of one improper aggravating factor. Moreover, we are confident that the trial court would have imposed a maximum sentence because the instant offense was Bates' third armed robbery conviction.

## II. Overlooked Mitigating Factor

[19] Next, Bates argues that the trial court "failed to recognize the existence of Bates' mental illness as a mitigating factor" and that "the record clearly support[s] that Bates suffers from mental illness." Bates' Br. p. 8. The trial court "is not obligated to accept the defendant's contentions as to what constitutes a mitigating circumstance or to give the proffered mitigating circumstances the same weight the defendant does." *Weisheit v. State*, 26 N.E.3d 3, 9 (Ind. 2015). "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Anglemyer*, 868 N.E.2d at 493. A trial court has discretion to determine whether the factors are mitigating and it is not required to explain why the court rejects the defendant's proffered mitigating factors. *Haddock v. State*, 800 N.E.2d 242, 245 (Ind. Ct. App. 2003).

[20] "Mental illness is not necessarily a significant mitigating factor; 'rather, [it] is a mitigating factor to be used in certain circumstances, such as when the evidence demonstrates longstanding mental health issues or when the [trier of fact] finds that a defendant is mentally ill.'" *Townsend v. State*, 45 N.E.3d 821, 831 (Ind. Ct. App. 2015), *trans. denied*. "[I]n order for a [defendant's] mental history to provide a basis for establishing a mitigating factor, there must be a nexus between the defendant's mental health and the crime in question." *Weedman v. State*, 21 N.E.3d 873, 894 (Ind. Ct. App. 2014), *trans. denied*. Here, Bates alleged the existence of a nexus between the robbery and his mental illness

when Bates attributed his commission of the crime to his being "off" his prescription medication for paranoid schizophrenia at the time of the crime. *See* Bates' App. Vol. II p. 44.

[21] The record reveals that, in sentencing remarks to Bates, the trial court stated: "[A]s you stated, you don't think this offense would have happened if you would have been on your med[ication]s. Your history should prove to you, sir, that you can never be off your meds"; and

> [t]he things that sway me to the sentence that I've pronounced [ ] are your past criminal history. Time and time again you have returned to what you know; . . . when you're left to your own devices, you don't necessarily follow through with your medications [or] with what you're supposed to do.

Tr. Vol. II pp. 47, 49.

[22] The trial court, thus, considered but declined to afford Bates' proffered mental health mitigator any weight because the trial court found a nexus between the crime and Bates' being "high" during the robbery; Bates' dedication to a criminal lifestyle; and Bates' rejection of crucial medication that Bates knew he needed to take. *Id*. at 47; *see Archer v. State*, 689 N.E.2d 678, 685 (Ind. 1997) (enumerating factors bearing on the sentencing weight, if any, to be given to mental illness: (1) extent of defendant's inability to control his behavior due to mental illness; (2) overall limitations on functioning; (3) duration of illness; and (4) extent of nexus, if any, between the crime and mental illness). We find no abuse of the trial court's sentencing discretion in this regard.

### III. Indiana Appellate Rule 7(B)

[23] Lastly, Bates argues that his maximum, sixteen-year sentence is inappropriate pursuant to Indiana Appellate Rule 7(B) and that "an appropriate sentence in this case would be the advisory sentence of 9 years." Bates' Br. p. 11. The Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decision. *See* Ind. Const. art. 7, §§ 4, 6; *Jackson v. State*, 145 N.E.3d 783, 784 (Ind. 2020). Our Supreme Court has implemented this authority through Indiana Appellate Rule 7(B), which allows this Court to revise a sentence when it is "inappropriate in light of the nature of the offense and the character of the offender." Our review of a sentence under Appellate Rule 7(B) is not an act of second guessing the trial court's sentence; rather, "[o]ur posture on appeal is [ ] deferential" to the trial court. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016) (citing *Rice v. State*, 6 N.E.3d 940, 946 (Ind. 2014)). We exercise our authority under Appellate Rule 7(B) only in "exceptional cases, and its exercise 'boils down to our collective sense of what is appropriate.'" *Mullins v. State*, 148 N.E.3d 986, 987 (Ind. 2020) (quoting *Faith v. State*, 131 N.E.3d 158, 160 (Ind. 2019)).

[24] "'The principal role of appellate review is to attempt to leaven the outliers.'" *McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)). The point is "not to achieve a perceived correct sentence." *Id*. "Whether a sentence should be deemed inappropriate 'turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a

given case.'" *Id.* (quoting *Cardwell*, 895 N.E.2d at 1224). Deference to the trial court's sentence "should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[25] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). Here, Bates pleaded guilty to robbery with a deadly weapon, a Level 3 felony. The sentencing range for a Level 3 felony is between three and sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5(b). Based on five valid aggravators that outweighed the mitigators, the trial court imposed a maximum sixteen-year sentence.

[26] Our analysis of the "nature of the offense" requires us to look at the nature, extent, and depravity of the offense. *Sorenson v. State*, 133 N.E.3d 717, 729 (Ind. Ct. App. 2019), *trans. denied*. The nature of the offense is as follows: Bates pretended to be an ordinary customer, requested assistance from Palmer, announced his intention to rob the store, and warned Palmer that he had a knife. Bates, thereby, placed Palmer in fear. Bates then stepped behind Palmer, placed a long knife against her neck, and forced the terrorized cashier to empty the cash register. Bates fled with the money.

[27] Our analysis of the character of the offender involves a "broad consideration of a defendant's qualities," *Adams v. State*, 120 N.E.3d 1058, 1065 (Ind. Ct. App. 2019), including the defendant's age, criminal history, background, and remorse. *James v. State*, 868 N.E.2d 543, 548-59 (Ind. Ct. App. 2007). Moreover, "[t]he significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, proximity, and number of prior offenses in relation to the current offense." *Sandleben v. State*, 29 N.E.3d 126, 137 (Ind. Ct. App. 2015) (citing *Bryant v. State*, 841 N.E.2d 1154, 1156 (Ind. 2006)). "Even a minor criminal history is a poor reflection of a defendant's character." *Prince v. State*, 148 N.E.3d 1171, 1174 (Ind. Ct. App. 2020) (citing *Moss v. State*, 13 N.E.3d 440, 448 (Ind. Ct. App. 2014), *trans. denied*).

[28] Here, Bates, who was fifty-five years old at the time of sentencing, has an extensive criminal history dating back to 1976 that is replete with convictions for theft, robbery, and violent crimes. Between 1976 and 1979, Bates amassed seven juvenile delinquency adjudications for offenses that, if committed by an adult, would constitute theft (twice); burglary (twice); attempted burglary; battery; and assault and battery with intention to cause grave bodily harm.[7]

[29] In 1980, Bates was waived to adult court for committing robbery with a deadly weapon, a Class B felony, for which Bates was sentenced to fifteen years in the

___

[7] We have excluded from our consideration juvenile offenses that appear on Bates' presentence investigation report with inadequate disposition and adjudication information.

DOC. Bates' additional adult criminal history includes misdemeanor convictions for criminal mischief; resisting law enforcement (twice); fleeing from police (twice); criminal conversion; public intoxication (twice); disorderly conduct; and domestic battery. In addition to the aforementioned Class B felony robbery conviction, Bates has prior felony convictions for: (1) assisting a criminal, a Class C felony; (2) battery with a deadly weapon; (3) possession of cocaine; and (4) Bates' second armed robbery conviction in 2001, for which he received a twenty-year sentence.[8]

[30] Thus, the instant offense is Bates' *third* felony conviction for an act of robbery with a deadly weapon. This alarming predilection reflects Bates' disdain for the rule of law, despite having served significant prison terms and notwithstanding numerous extensions of grace and leniency from various courts. Bates' vast criminal history—coupled with his record of prison write-ups and violations of probation, parole, and community supervision—shed unfavorable light on Bates' character. Additionally, Bates' substance abuse history reflects poorly on his character. Bates has abused "LSD, cannabis, cocaine, methamphetamine, and alcohol" and was "high" on synthetic marijuana when he committed the instant offense. Bates' App. Vol. II p. 46; Tr. Vol. II p. 189. Despite numerous opportunities to pursue addictions treatment outside prison, Bates has

---

[8] In the year immediately following his release from prison in 2013, Bates was arrested and convicted of two misdemeanor offenses. Also, we note that the presentence investigation report does not designate a Class or Level for most of Bates' prior convictions.

continued to fuel his "polysubstance abuse and dependence" issues and "reported he has never received addictions treatment" outside jail. *Id*.

[31] Based on the foregoing, Bates has failed to persuade us to revise his sentence; accordingly, we conclude that his maximum sentence is not inappropriate in light of the nature of his offense and his character.

## Conclusion

[32] The trial court did not abuse its sentencing discretion by imposing an enhanced sentence. Bates' maximum sentence is not inappropriate in light of the nature of his offense and his character. We affirm.

[33] Affirmed.

Bailey, J., and Robb, J., concur.